22CA0149 Peo v Strong-Dalton 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0149 Jefferson County District Court No. 20CR2540 Honorable Robert Lochary, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Matthew Martin Strong-Dalton, Defendant-Appellant. ORDER AFFIRMED Division VII Opinion by JUDGE KUHN Tow and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, M. Shelby Deeney, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Matthew Martin Strong-Dalton, appeals the revocation of his deferred judgment. We affirm. I. Background ¶ 2 In June 2020, a car wash replaced some equipment and stacked the old items in its parking lot. Surveillance video showed a car registered to Strong-Dalton arrive and two men take the old equipment. The prosecution charged Strong-Dalton with class 4 felony theft in connection with this incident. In December 2020, he entered into a plea agreement to a class 5 felony charge of first degree criminal trespass of a dwelling. Strong-Dalton and the prosecution stipulated to a two-year deferred judgment and sentence under the supervision of probation. ¶ 3 As part of his deferred judgment, Strong-Dalton was, as relevant here, required to not commit any further offenses, “refrain from any use of alcohol or unlawful use or possession of controlled substance,” “submit to monitored drug and alcohol scans,” and pay restitution to the car wash. In February 2021, the probation department filed a revocation complaint, alleging that Strong-Dalton had failed to submit an oral swab drug test, tested positive for an illicit substance, and picked up a new criminal charge. To resolve 
2 this complaint, the parties agreed that Strong-Dalton would admit to the technical violations of his deferred judgment conditions to make a record of them but that the court would not revoke the deferred judgment. ¶ 4 Then, in September 2021, probation filed another revocation complaint, alleging that Strong-Dalton had again violated the terms and conditions of his deferred judgment and sentence. As grounds for revocation, the probation officer alleged that Strong-Dalton had failed to submit nine oral swabs for drug testing since late April 2021, hadn’t provided verification of his employment or schooling, and had failed to enter into a payment agreement or make restitution payments. But prior to the revocation hearing, Strong-Dalton connected with the owner of the car wash, reached a settlement, and resolved the outstanding restitution he owed. ¶ 5 The prosecution then moved forward with the revocation hearing solely on the grounds of failure to submit the required drug tests. At the hearing, the prosecutor called Strong-Dalton, who acknowledged that he had “had a string of missed tests.” He explained that he had experienced a death in his family in May and another family death prior to that. He also explained that he had 
3 had to put his dog down two days before the hearing. Strong-Dalton testified that he “fell into a deep depression being unemployed. [He] kind of gave up for a while.” On cross-examination, Strong-Dalton offered to do a hair follicle test to demonstrate his sobriety. ¶ 6 The trial court found credible Strong-Dalton’s testimony that he suffered a family tragedy that made things difficult and commended him on completing the ultimate goal of making the victim whole. However, the court also found that the prosecution met its burden of establishing by a preponderance of the evidence that Strong-Dalton missed oral swabs on at least the three different dates cited in the complaint and determined that “accordingly, pursuant to operation of law, the deferred judgment and sentence is revoked.” ¶ 7 The trial court then proceeded to sentencing and, ultimately, declined to impose any further sentence. In doing so, it noted that — because of a different case — Strong-Dalton would still be under supervision until the next May. Giving credence to his equitable argument that he had satisfied the primary purpose of the deferred 
4 judgment by resolving restitution, the court closed the case with no further sanction. II. Analysis ¶ 8 Strong-Dalton argues that the trial court erred by (1) violating his due process rights when it failed to find that he had the ability to pay for his drug tests and (2) finding that he failed to comply with the conditions of his deferred judgment. We disagree. A. Applicable Law and Standard of Review ¶ 9 A deferred judgment is a privilege. McCulley v. People, 2020 CO 40, ¶ 12. As an alternative to a traditional guilty plea, it allows a defendant to plead guilty but defers entry of the judgment and sentence for a specified period of time. Williams v. People, 2019 CO 101, ¶ 20. The district attorney may enter a written stipulation requiring the defendant to comply with certain conditions, similar to those permitted as part of probation. Id. (citing § 18-1.3-102(2), C.R.S. 2023). ¶ 10 If the defendant complies with these conditions throughout the deferral period, then the court must withdraw the guilty plea and dismiss the charges underlying the deferred judgment. Id. at ¶ 21. “But, if the defendant violates ‘any condition regulating the conduct 
5 of the defendant,’ the court ‘shall enter judgment and impose sentence upon the guilty plea.’” Id. at ¶ 22 (quoting § 18-1.3-102(2)). The violation need only be proven by a preponderance of the evidence. See Adair v. People, 651 P.2d 389, 391 (Colo. 1982). And “a trial court does not have discretion in revoking a deferred judgment once it finds that the defendant has violated the terms of a deferred judgment and sentence.”
1 People v. Wilder, 687 P.2d 451, 453 (Colo. 1984). ¶ 11 Whether a defendant violated the terms of the deferred judgment is a question of fact for the trial court to resolve. See Adair, 651 P.2d at 391. Strong-Dalton challenges the sufficiency of the evidence supporting the court’s finding. In such a case, we review the record de novo to determine whether sufficient evidence supported the trial court’s finding. See id.; see also Dempsey v. People, 117 P.3d 800 (Colo. 2005). ¶ 12 Strong-Dalton also asserts that his due process rights have been violated. This presents a question of law, see People v. Nave, 1 The exception to this mandatory imposition rule is not argued or applicable to Strong-Dalton’s claim. See § 18-1.3-102(2), C.R.S. 2023. 
6 689 P.2d 645, 647 (Colo. App. 1984), which we review de novo, see People v. Calderon, 2014 COA 144, ¶ 23. B. Strong-Dalton’s Due Process Claim ¶ 13 Strong-Dalton argues that the trial court violated his due process rights when it revoked his deferred judgment because it was required to first find whether he had the ability to pay for his required drug testing. We discern no error.
2 ¶ 14 As part of this assertion, Strong-Dalton points us to case law demonstrating that a deferred judgment revocation receives the same procedural safeguards as a parole or probation revocation. See Finney v. People, 2014 CO 38, ¶ 15 (“A defendant facing revocation of a deferred judgment is entitled to the same procedural safeguards as a defendant facing revocation of parole or probation.”); People v. Loveall, 231 P.3d 408, 414 (Colo. 2010) (there are minimum requirements revocation hearings must follow to comply with due process). 2 The People and Strong-Dalton dispute whether he preserved his due process claim. But because we discern no error, we need not resolve this dispute. 
7 ¶ 15 In doing so, Strong-Dalton first contends that “violations of probation must be voluntary” and argues that the trial court did not make a finding of voluntariness. It’s true that “the trial court [could not] revoke probation and impose imprisonment without first determining whether [Strong-Dalton] failed to comply with probation willfully or failed to make sufficient bona fide efforts to acquire resources to comply with probation.” Sharrow v. People, 2019 CO 25, ¶ 42 (citing Bearden v. Georgia, 461 U.S. 660, 668 (1983)). But here the trial court did not impose imprisonment or any other deprivation of freedom. So the voluntary or willful finding requirement that Strong-Dalton relies on is inapplicable to this matter. See id.; Bearden, 461 U.S. at 668; Strickland v. People, 197 Colo. 488, 490, 594 P.2d 578, 579 (1979). ¶ 16 Strong-Dalton next argues that before revoking his deferred judgment, the court first had to determine whether he had an ability to pay for his drug testing. But Colorado law treats payment conditions, such as restitution, differently than nonpayment conditions, such as drug testing. [U]nlike the failure to discharge a fine or restitution . . . a defendant’s indigency will not always be relevant where, as here, 
8 nonpayment conditions of probation are alleged to have been violated. Therefore, when the condition of probation allegedly violated is not a required payment, the trial court is under no obligation to inquire sua sponte about the reasons for the defendant’s alleged failure to comply with probation. Rather, it is incumbent on the defendant to assert that his lack of financial means prevented him from complying with a nonpayment condition of probation. Sharrow, ¶ 44 (emphasis added). ¶ 17 The trial court found that Strong-Dalton successfully completed restitution, which was the payment provision of his deferred judgment. But as he admitted during the revocation hearing, he didn’t complete his nonpayment condition of drug testing — not because of an inability to pay, but because “[he] had a death in the family. [He] fell into a deep depression being unemployed. [He] kind of gave up for a while.” Strong-Dalton never asserted “that his lack of financial means prevented him from complying with a nonpayment condition of probation.” Id. ¶ 18 Additionally, the record demonstrates that the probation officer had funding available for Strong-Dalton, was “more than happy to provide funding for [him],” and did submit funding requests for his drug testing. However, Strong-Dalton began 
9 missing tests regardless. So even if he had claimed an inability to pay for the tests, the record wouldn’t support his claim.
3 ¶ 19 Because Strong-Dalton didn’t assert that his lack of financial means prevented him from complying with the nonpayment condition of his deferred judgment, and because the record doesn’t support that conclusion in any case, we conclude that the trial court did not violate his due process rights. C. Sufficiency of the Evidence to Support Revocation ¶ 20 We now turn to Strong-Dalton’s argument that the trial court erred by revoking his deferred judgment because there is insufficient evidence to show that he violated its terms and conditions. We disagree. ¶ 21 In support of this argument, Strong-Dalton points to his probation officer’s testimony that drug testing was not ordered by the court. As the People point out, it is somewhat unclear what the 3 Additionally, we note that the availability of funding for drug testing wholly undercuts Strong-Dalton’s argument that his failure to drug test was involuntary. See Williams v. People, 454 P.3d 219, 228 n.7 (Colo. 2019) (explaining that “in proving that a defendant has the ability to pay and failed to make a good-faith effort to pay, the prosecution necessarily establishes that any failure to pay was willful or at least unreasonable”). 
10 probation officer was referring to in his testimony on this point. But regardless, the testimony can’t overcome the plain language of the executed deferred judgment agreement in the record. In it, Strong-Dalton agreed to the terms and conditions of his deferred judgment, including requirements that he would “refrain from any use of alcohol or unlawful use or possession of a controlled substance without a prescription” and that he would “submit to monitored drug and alcohol scans.” And as noted above, Strong-Dalton testified that he “had a string of missed tests.” ¶ 22 Thus, this record shows that sobriety monitoring was a condition of the deferred judgment agreement. And Strong-Dalton’s own testimony is direct relevant evidence that, “when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that [he violated his deferred judgment agreement].” McCoy v. People, 2019 CO 44, ¶ 63. Accordingly, there is sufficient evidence to support the court’s finding that he violated his deferred judgment agreement, and thus to support revocation. ¶ 23 Strong-Dalton’s final contention is equitable: he argues that he substantially complied with the deferred judgment because he met 
11 the ultimate goal of making the victim whole. The trial court recognized this and exercised its discretion during sentencing when it declined to impose any further sentence on Strong-Dalton and noted his successful payment of restitution.
4 See People v. Muckle, 107 P.3d 380, 380 (Colo. 2005) (“Traditionally, the trial court has broad discretion at sentencing.”). Regardless, “if the defendant violates ‘any condition regulating the conduct of the defendant,’ the court ‘shall enter judgment and impose sentence upon the guilty plea.’” Williams, ¶ 22 (emphasis added) (quoting § 18-1.3-102(2)). Given the facts of this case, Strong-Dalton’s equitable argument doesn’t change our conclusion that the court didn’t err by revoking his deferred judgment. III. Disposition ¶ 24 The order is affirmed. JUDGE TOW and JUDGE GOMEZ concur. 4 While we don’t think Strong-Dalton challenges that sentencing decision in his favor, we also see no basis to disturb it if he were. See DeBella v. People, 233 P.3d 664, 666 (Colo. 2010).